## Rapp *vs.* Commonwealth.

### APPEAL FROM MADISON CIRCUIT.

1. The indictment charges the offense described in the *2d section, article* 6, *Revised Statutes, page* 251, that is, maliciously shooting with intent to kill. To constitute this offense it must be such, that in case death had ensued it would have been murder. And if the case be such as would not be murder had death ensued, that is, the wounding be not in self-defense but done in a sudden affray, or in sudden heat and passion, without previous malice, it is not felony prescribed by the section above, but a misdemeanor defined by *article* 17, *chapter* 28, *Revised Statutes, page* 264. This section defines a case, which if death were to ensue, is manslaughter. The two sections recognize the distinction established between *murder* and *manslaughter*.

2. The sudden heat and passion referred to in *article* 17, *chapter* 28, in describing the misdemeanor, must be a passion caused by such provocation, as in case death ensue from the wound would reduce the offense from *murder* to *manslaughter*. Mere words or gestures, though they may excite passion, do not constitute such provocation as will, of itself, extenuate a homicide committed with a deadly weapon, and make it manslaughter.

3. If, from all the circumstances attending the infliction of a wound, the jury should believe that the party believed and had reasonable grounds to believe that the party wounded intended to proceed immediately to the infliction of bodily harm upon him with a knife in his hand, and that he would do so unless prevented by such act of defense as was then in his power, the act will be excusable on the ground of self-defense.

4. It was competent for the defendant indicted for shooting maliciously with intent to kill, to prove that a son of the person wounded, who was in the store when the defendant and his father entered it, (his father having invited defendant into the store,) but immediately ran up stairs and immediately returned about the time defendant shot at his father with a pistol, which he snapped at defendant, which it appeared had been loaded some days before when he made a contingent threat to shoot defendant, of which defendant had been notified. This evidence would tend to elucidate the motives and acts of the parties.

Daniel Rapp was indicted, tried, and convicted in the Madison circuit court upon the charge of maliciously shooting David J. Rowland with the intent to kill; a new trial was moved for and overruled by the circuit judge, and the defendant has appealed to this court. <span style="float:right">Case stated.</span>

The grounds filed for the new trial are the following: 1. The verdict of the jury is contrary to law and evidence. 2. The court misdirected the jury as to the law of the case. 3. The court permitted illegal evidence to go to the jury. 4. The court erred in withholding legal evidence, on the part of the defense, from the jury.

The following instructions were given at the instance of the attorney for the commonwealth:

1. If the jury find, from the evidence, that the prisoner either voluntarily or purposely, and without any legal provocation or excuse, shot Rowland in the face with the pistol shown to them, they will find him guilty, and assess his confinement in the penitentiary for a period not less than one year, nor more than five years.

2. That no words, however irritating, will amount to legal provocation or justify or excuse a blow, much less shooting or stabbing, under the statute; neither will any threat, which is not being executed at the time, excuse a shooting.

RAPP
*vs.*
COMMONWEALTH

The following instructions were moved by the defendant: No. 3. That if, at the time the prisoner shot Rowland, Rowland was about to execute a threat to cut off the prisoners ears, then the shooting was excusable. No. 4. That if the jury shall find there was no previous express malice, and that the shooting was done in a moment of sudden heat and passion and great excitement, occasioned by insulting and menacing language and threats and violent assault on the part of Rowland, and without fault on the part of the prisoner, he is not guilty of the charge in the indictment, and the jury should so find. No. 5. If the jury should believe that Rowland advanced upon the prisoner with a drawn knife in a threatening manner, it is an assault in law. No. 6. That unless the jury are satisfied beyond a reasonable doubt, from the whole evidence in the case, that the shooting by the prisoner was done maliciously, the law is for him, and the jury should find him not guilty. No. 7. That the jury cannot find the prisoner guilty under this indictment, unless they believe the prisoner would have been guilty of murder, if Rowland had not survived the shot.

All of which were given by the court. But in regard to the 4th and 5th instructions, the court said to the jury, "that there was nothing in instruction No. 4., inconsistent with previous instructions; that the material point in instruction No. 4. was the assault and not the insulting or menacing language; that an assault in law was an effort to strike, cut, or shoot, within striking, cutting, or shooting distance, and if a party started to strike or cut, and before he got within striking or cutting distance stopped and abandoned his purpose, it was not an assault in law; that the jury had a right to determine from all the evidence whether, if Rowland started to assault Rapp, and stopped short of his reach, he done so having abandoned his purpose, or suspended it for a more favorable opportunity—if the former, the shooting was not in self-defense; if the latter, it was in self-defense.

RUNYAN, BRECK, and HARRIS, for appellant—

The charge in the indictment is for maliciously shooting with intent to kill. It was not necessary for the defense of Rapp against this charge that the shooting should have been either justifiable or excusable; it was only necessary that it should have been attended with such circumstances as would have extenuated the offense, if Rowland had been killed, from murder to manslaughter. In this view of the law, which is believed to be incontrovertible, the case was not fairly before the jury in the court below. The record shows that there was testimony before the jury conducing to prove the shooting justifiable, in self-defense, and it was so considered by the circuit judge; and, at all events, we think it may be assumed as beyond doubt or question, that the testimony conduced to prove, or there was testimony conducing to prove, the shooting attended with such circumstances, that if death had ensued, the killing would at most have been manslaughter. Upon this assumption, the questions arise whether the court below correctly ruled the law.

From the exposition of the law to the jury by the circuit judge, it is not only manifestly to be inferred, but was so ruled in express terms, that the act of shooting must have been justifiable, or which, in cases of this kind, is precisely the same thing, excusable, (although both terms are used by the judge,) to authorize a verdict of not guilty.

In the first instruction the jury were told, that if they found the shooting was voluntary and without any legal provocation or excuse, they must find the prisoner guilty. What constituted legal provocation or excuse, which it was the province and duty of the court to define, was not explained, but it was left with the jury to determine.

But the instruction is otherwise objectionable, and is not the law applicable to the case. It by no means followed that the prisoner was guilty because the shooting was voluntary and without legal excuse. It

might have been without malice, and still not excusable, but a penal offense, although not punishable under the indictment in this case.

The second and third instructions are liable to the same objections, making the fate of the prisoner turn upon the fact whether the shooting was or not justifiable.

There was testimony tending to establish every fact upon which the fourth instruction was predicated. It was clearly the law of the case, and should have been given as moved. By the verbal qualifications, however, it was not only utterly paralyzed for defense, but was rendered available and improperly so, for the prosecution.

The court, in effect, told the jury that if Rowland started with his knife to cut off Rapp's ears, and before he got near enough to make the excision or perform the operation stopped, the jury had a right to determine whether he stopped, thereby abandoning his purpose, or whether he stopped, merely suspending it for a more favorable opportunity, and if they found the former, then the shooting was not in self-defense, but if the latter then it was in self-defense. The same idea appears in this qualification, that unless Rapp shot in self-defense, the jury should find him guilty. But still worse, the fate of Rapp is made to turn upon what the jury might believe was the intention of Rowland in stopping. He had approached near enough to be badly powder burnt by the discharge of Rapp's pistol, yet, if when he stopped he concluded to go no nearer, Rapp ought to be found guilty. Such, we think, is not and cannot be the law in this or any other country, where law is based upon reason and common sense. As the court undertook by the verbal qualifications to instructions moved by the defense, to explain the law, it should have given the whole law applicable to the case. This certainly was not done. The jury were not told what circumstances would have reduced or extenuated the offense to manslaughter if the result of the shooting had been fatal.

There was testimony tending to establish such facts or circumstances, and the jury should have been instructed in regard to them; but the court seems to have been under the impression that Rapp could only be acquitted upon the ground the shooting was in self-defense.

It is further insisted, the court below should have permitted the testimony of McIntyre and Chaney to go to the jury, in regard to threats made against Rapp, and other facts as detailed in the bill of exceptions.

The facts offered to be proved, after the proof of the commonwealth of the purchase of the pistol by Rapp, were clearly competent as rebutting testimony to prove—1st. That Rapp had sufficient cause for carrying weapons, aside from any difficulty with Rowland, and that the controversy with him, and the shooting, was not upon any old grudge; and 2d. To prove a conspiracy and concert among the Rowlands, and to explain the conduct of Hugh Rowland.

The history of the case, as it appears in the record, which, if permissible, we might say is very imperfect and much to the prejudice of Rapp, shows it a hard case upon him, and as we think, that he has been hardly dealt with.

An industrious, peaceable, quiet man, deformed and a cripple; he was invited by Rowland into his house, where he was insulted and assailed on one side by him with a knife and a threat to cut his ears off, and on the other by his son with a pistol. If Rowland, under such circumstances, had been killed, the offense certainly would only have amounted to manslaughter.

The case is submitted with entire confidence that it will be reversed.

J. HARLAN, *Attorney General*, for commonwealth—

The defendant in the court below was indicted for feloniously and maliciously shooting David J. Rowland, but without killing him. A trial was had in the

circuit court, and defendant was found guilty, and his confinement in the penitentiary fixed at one year. Defendant prayed an appeal to this court, according to the provisions of the Code of Practice in Criminal Cases, *section* 327, 328, 329. The appeal was allowed by a judge of this court—*section* 329.

The questions presented for the decision of this court arise out of the instructions given by the judge of the circuit court at the instance of the commonwealth's attorney, the modifications of the instructions moved by the counsel for the prisoner, and in refusing to permit evidence offered by the prisoner to be given to the jury—

1. The instructions given at the instance of the commonwealth's attorney, seem to be in accordance with the law upon that subject.

2. There is, in my mind, some difficulty as respects the modifications made by the circuit judge, and they are submitted to the court for its decision.

3. The evidence which the court excluded, did not appear to be of that kind which should be considered by the jury.

It is conceded that the case should be considered as a case of murder : that is, the prisoner was guilty of maliciously shooting if the wound had proved mortal. That the prisoner would have been guilty of murder if Rowland had died from the wound, I refer the court to *Archbald's Criminal Practice and Pleadings*, *vol. 2, page* 249 ; *Greenleaf's Evidence*, *vol.* 3, *title* "*Homicide;*" 1 *East. Crim. Law*, *title* "*Homicide.*"

Upon the subject of the form of the indictment, and the evidence to support it in a case of shooting with an intent to murder, see 2 *Archbald's Criminal Pleading*, *pages* 270–1.

The whole subject is submitted to the court.

September 21. Chief Justice MARSHALL delivered the opinion of the court.

This is an appeal from a judgment of the Madison circuit court by which, in conformity with the ver-

RAPP
vs.
COMMONWEALTH

dict previously rendered, Daniel Rapp was sentenced to be confined in the jail and penitentiary of this commonwealth, at hard labor, for the space of one year. The crime charged in the indictment, and of which he was found guilty, is that of feloniously, wilfully, and maliciously shooting and wounding David J. Rowland with a pistol, and with intent then and there to kill him, but of which wound Rowland did not die.

The indictment charges the offense described in the *2d section of the 6th article of chapter 28th of the Revised Statutes, page* 251, and the accused was convicted and sentenced under that section. The offense is that of malicious shooting with intent to kill; and as malice must exist to constitute the crime, it seems to follow, and it is our opinion that the case under this section of the statute must be such as would be murder if death had ensued. And if the case be such as would not be murder had death ensued, that is if the wounding be not in self-defense, but done in a sudden affray or in sudden heat and passion, without previous malice, it is not a felony punished by the section referred to but is a misdemeanor defined and punished by the *1st section of article* 17, *chapter 28th of the Revised Statutes, page* 264. This section in our opinion defines a case which if death were to ensue, would be manslaughter. Thus the established distinctions between murder and manslaughter furnish the true grounds for discriminating between the offenses denounced and punished by the two sections referred to.

In view of these grounds of discrimination we are of opinion that the sudden heat and passion referred to in the section last cited, in defining the misdemeanor therein described, must be a passion caused by such provocation as in case death ensued from the wound would reduce the offense from murder to manslaughter. And mere words or jestures though they may excite passion do not constitute such provocation as will of itself extenuate a homicide committed with a deadly weapon, and make it manslaughter. This position is

1. The indictment charges the offense described in the 2d sec, art. 6, *Rev. Stat., page* 251, that is, maliciously shooting with intent to kill. To constitute this offense it must be such, that in case death had ensued it would have been murder. And if the case be such as would not be murder had death ensued, that is, the wounding be not in self-defense, but done in a sudden affray, or in sudden heat and passion, without previous malice, it is not felony prescribed by the section above, but a misdemeanor defined by *art.* 17, *chapter* 28, *Rev. Stat., page* 264. This section defines a case, which, if death were to ensue, is manslaughter. The two sections recognize the distinction established between *murder* and *manslaughter.*

RAPP
vs.
COMMONWEALTH

2. The sudden heat and passion referred to in *article* 17, *chapter* 28, in describing the misdemeanor, must be a passion caused by such provocation, as in case death ensue from the wound would reduce the offense from *murder* to *manslaughter*. Mere words or gestures, tho' they may excite passion, do not constitute such provocation as will, of itself, extenuate a homicide committed with a deadly weapon, and make it manslaughter.

3. If, from all the circumstances attending the infliction of

laid down in all the elementary books which we have seen and is sustained by the current of adjudged cases, and is too familiar to require a reference to authority.

With these preliminary remarks not inapplicable to the case before us we proceed to state briefly the general facts of the case and the questions made on the trial. It appears that Rowland having been informed of certain conduct of Rapp which he deemed injurious and offensive to himself, called Rapp into his store, and placing himself in a position nearer to the front door than that occupied by Rapp, charged him with the offensive acts and upon his denial called him a liar and used other offensive language, and as he himself says, told Rapp that if he did the like again he would cut his ears off and then making a movement (the direction of which he describes by reference to objects in his store) stopped as he says with his pocket knife half or entirely open, and said "this is the knife I will do it with" being then from five to seven feet from Rapp who drew a pistol and shot him in the cheek bone, &c., but he says he made no motion or attempt to use the knife, and did not by word or act indicate an intention to use it at that time, or at any time, except upon the contingency mentioned.

Two witnesses for the defense speak of the threat and attitude of Rowland—one of them says that coming in front of Rowlands store he saw him with an open knife in his hand and raised above his head, and heard him tell Rapp he was a liar and he had caught him in it, and he would cut his ears off. The other witness also states the threat of Rowland, with an open knife in his hand, and without any contingency. He also speaks of the movement of Rowland and his stopping before uttering the threat. But how long he stopped before the pistol was fired is not stated by any one.

This court is of opinion that even if Rowland did not in fact intend to proceed immediately to cut off Rapps ears or otherwise to use his knife in inflicting bodily harm upon him, still if from his offensive lan-

guage, his movements, his threats, his attitude, and proximity and from the fact that he had called Rapp into his store and after taking his position immediately commenced his reproaches, terminating with a threat, and from all other circumstances developed by the evidence as existing at the time, and which may bear on the question of intention, the jury should be of opinion that Rapp did believe, and that he had reasonable ground to believe that Rowland intended to proceed immediately to the infliction of bodily harm upon him with the knife in his hand, and that he would do so unless prevented by such act of self-defense as was then in the power of Rapp, then the shooting by Rapp was excusable cn the ground of self-defense and apparent necessity. But if he had not reasonable ground to apprehend immediate violence to his person by Rowland by the use of the knife, then his act of shooting and thus aiming at the life of Rowland was not only, not excusable as being in self-defense, but it was not done under such provocation as on the ground of heat and passion would make it a misdemeanor instead of a felony.

But this court is equally divided upon the question whether the instructions of the circuit court as contained in the qualification to the instructions given for the defendant do or do not put the case before the jury upon the principles above cited. There cannot therefore be a reversal on account of this qualification. With respect to which we remark further that the definition of an assault therein contained is technically correct.

We are of opinion however that the court erred in refusing to permit the defendant to prove that Hugh Rowland, a son of the party wounded, who was in the store when his father and Rapp entered it, but immediately ran up stairs and returned about the time of the shooting, with a pistol which he aimed at Rapp and snapped at him, had had his pistol loaded a few days before and had then made a contingent threat to shoot Rapp, of which Rapp was notified before the

RAPP
vs.
COMMONWEALTH

a wound, the jury should believe that the party believed and had reasonable grounds to believe that the party wounded intended to proceed immediately to the infliction of bodily harm upon him with a knife then in his hand, and that he would do so unless prevented by such act of defense as was then in his power, the act will be excusable on the ground of self-defense.

4. It was competent for the defendant indicted for shooting maliciously with intent to kill, to prove that a son of the person wounded, who was in the store when the defendant and his father entered it, (his father having invited defendant into the store,) but immediately ran up stairs and immediately returned about the time defendant shot at his father with a pistol, which he snapped at defendant, which it appeared had been loaded some days before when he made

a contingent
threat to shoot
defendant, of
which defend-
ant had been
notified. This
evidence would
tend to eluci-
date the mo-
tives and acts
of the parties.

interview with Rowland in which he shot him. This evidence would tend to elucidate the motives and acts of the parties. And its exclusion was an error prejudicial to the accused.

Wherefore the judgment is reversed and the cause remanded for a new trial in conformity with the principles of this opinion.